**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

---

ROBERT D. FRAZIER,

                            Plaintiff,        DECISION AND ORDER

        -vs-                                    03-CV-6171 CJS

NEXTEL PARTNERS, INC.,

                            Defendant.

---

**APPEARANCES**

For Plaintiff:                    Robert D. Frazier, *pro se*
                                      10 Manhattan Sq.
                                      Box 1696
                                      Rochester, NY  14607
                                      (585) 756-8879

For Defendant:                John M. Monahan, Esq.
                                      Jaeckle, Fleischmann & Mugel
                                      700 Fleet Bank Bldg.
                                      12 Fountain Plaza
                                      Buffalo, NY  14202
                                      (716) 856-0600

**INTRODUCTION**

     This employment discrimination case, based upon plaintiff's race and age, is before the Court on defendant's motion (# 34) for summary judgment. For the reasons that follow, the Court grants the motion.

**BACKGROUND**

Despite being given an extraordinary lengthy amount of time to respond, and a detailed *Irby* notice indicating that he had to respond to defendant's motion for summary judgment with a memorandum of law, a list of disputed facts, and evidentiary proof in admissible form, plaintiff has completely failed to do so. Accordingly, pursuant to the local rules of this Court, defendant's unopposed statement of facts is adopted in its entirety:

> 1. Plaintiff Robert Frazier was hired by NPI at its Rochester, NY office on July 2, 2001 as an Inside Account Executive. (Flatley Affidavit ¶ 4; Coomes Affidavit ¶ 4)
>
> 2. For most of plaintiff's employment his manager was Bill Flatley, General Manager for the Rochester office. (Flatley Affidavit ¶5; Coomes Affidavit ¶5)
>
> 3. Inside Account Executives are responsible for achieving an established sales quota through managing inbound/outbound sales calls. Additionally, along with the Customer Account Representatives in the office, the Inside Account Executive is responsible for handling sales inquiries and service requests from walk-in customers. Consequently, plaintiff's job required him to be in constant contact with current and potential customers. (Coomes Affidavit ¶7; Appendix Exhibit H).
>
> 4. Plaintiff received formal training at a "Getting Directly Connected" 3-day seminar on August 21-23, 2003, and additional formal training in sales on October 16-18, 2001. (Appendix Exhibit M). Plaintiff also received informal training on phones and sales throughout his employment by his manager and the Customer Account Representatives, and was given two manuals on sales and cell phones to review. (Coomes Affidavit ¶¶24-25)
>
> 5. Plaintiff was aware that NPI has an Attendance and Punctuality policy. (Coomes Affidavit ¶8; Appendix Exhibit I, p. 10).
>
> 6. Plaintiff was aware that one of NPI's guiding principles is to strive for 100% customer satisfaction. (Coomes Affidavit ¶8; Appendix Exhibit I, p. 4).
>
> 7. Sometime in the end of July or beginning of August, 2001, Tara Dolan, a Customer Account Representative, received phone calls from some of the accounts she managed. These customers called to complain about the treatment they had received from the plaintiff when they came into the office. (Dolan Affidavit ¶5).

8. On August 9, 2001, Tara Dolan sent Bill Flatley an email detailing specific customer complaints she had received regarding the plaintiff. (Dolan Affidavit ¶10, Flatley Affidavit ¶14, Coomes Affidavit ¶9; Appendix Exhibit R, pp. 1-2).

9. On or about August 15, 2001, Mr. Flatley spoke with plaintiff regarding the customer complaints documented in Ms. Dolan's email. (Flatley Affidavit ¶15; Coomes Affidavit ¶10).

10. On or about October 25, 2001, Mr. Flatley had a coaching session with the plaintiff about plaintiff's attitude with customers. (Flatley Affidavit ¶16; Coomes Affidavit ¶11).

11. On or about October 26, 2001, Ms. Dolan sent an email to Mr. Flatley stating that plaintiff needed to gain product knowledge, learn better customer interaction, stay off personal phone calls and assist in the office when needed. (Dolan Affidavit ¶ 15; Flatley Affidavit ¶17; Appendix Exhibit R, pp. 3-4).

12. On November 7, 2001, Ms. Dolan sent an email to Mr. Flatley, Susan Lenda and Timothy Magin asking what plaintiff's hours were because he was not coming in every day at 8:00 o'clock A.M. as scheduled. (Dolan Affidavit ¶ 17; Flatley Affidavit ¶18; Appendix Exhibit R, p. 5)

13. On December 3, 2001, Ms. Dolan sent an email to Mr. Flatley, Susan Lenda and Timothy Magin informing them that plaintiff had difficulty taking his lunch on time. (Dolan Affidavit ¶ 17; Flatley Affidavit ¶18; Appendix Exhibit R, p. 6).

14. On or about December 7, 2001, a customer named Beverly Jackson came into the office. This customer complained to Mr. Flatley that plaintiff was rude and condescending and that she ripped up her paperwork and left the office. After plaintiff called her cell phone a number of times, the customer came back into the office to lodge a complaint with Mr. Flatley. (Flatley Affidavit ¶19; Coomes Affidavit ¶12; Appendix Exhibit N).

15. On or about December 7, 2001, Mr. Flatley called plaintiff into his office to discuss the Beverly Jackson complaint. Plaintiff told Mr. Flatley that the customer was "getting an attitude" with him. He further told the customer to "go sit down over there. Get away from me." At the end of the meeting plaintiff stated: "I am a black man and she is a black woman. I understand my race better than you do. A man can never really understand what a woman wants." Mr. Flatley ended the meeting and contacted Christine Coomes, People Development Manager. (Flatley Affidavit ¶20; Coomes Affidavit ¶13; Appendix Exhibit N).

16. Mr. Flatley documented this meeting in a memo "For the Record" that

was sent to Ms. Coomes and was placed in plaintiff's personnel file. (Flatley Affidavit ¶21; Coomes Affidavit ¶12; Appendix Exhibit N).

17. On December 13, 2001, Mr. Flatley and Ms. Coomes met with the plaintiff to develop a written performance plan. At this meeting plaintiff was informed that he needed to increase his sales as he had only performed at 25% of his quota to year to date. Mr. Flatley also spoke to plaintiff about the importance of being on time for work and the importance of speaking to customers in a professional manner and tone. Mr. Flatley reiterated that NPI has a 100% customer satisfaction policy and that customer complaints are not satisfactory. During the same meeting, plaintiff was informed that he needed to gain product knowledge to ensure that he was giving customers accurate and complete product/service information and that customers questions/complaints would be addressed and answered to the customer's satisfaction. (Flatley Affidavit ¶22; Coomes Affidavit ¶13; Appendix Exhibit O).

18. After the meeting, Mr. Flatley drafted a written performance plan and sent it to Ms. Coomes for her review. (Flatley Affidavit ¶23; Coomes Affidavit ¶14; Appendix Exhibit O).

19. On January 2, 2002, Mr. Flatley reviewed the written performance plan with the plaintiff and plaintiff signed it. (Flatley Affidavit ¶24; Coomes Affidavit ¶14; Appendix Exhibit O).

20. On January 3, 2002, plaintiff was coached by Mr. Flatley about the importance of giving customers options when they came in for repairs on their phones. (Flatley Affidavit ¶26).

21. On January 7, 2002, Mr. Flatley received a call from a customer named Steven Diaz. The customer complained that plaintiff was repeatedly rude to him. (Flatley Affidavit ¶27).

22. On January 8, 2002, Mr. Flatley again coached plaintiff on the importance of customer service and satisfaction. (Flatley Affidavit ¶28).

23. On January 14, 2001, Mr. Flatley called plaintiff into his office at the end of the day and terminated plaintiff's employment. Mr. Flatley went over the written performance plan at that time and informed plaintiff that it appeared he chose not to accept the coaching Mr. Flatley had given him. Because of the receipt of another customer complaint, failure to meet his sales quota, and tardiness, his employment was terminated. (Flatley Affidavit ¶¶29-30; Coomes Affidavit ¶15).

24. Mr. Flatley documented the circumstances leading to plaintiff's termination in an email to Ms. Coomes on January 24, 2002. (Flatley Affidavit

¶31, Coomes Affidavit ¶ 16, Appendix Exhibit Q).

25. Plaintiff never met his sales quota for any month during his employment with NPI. The percentages of quota plaintiff achieved are as follows:

- July 2001 - 27.73%
- August 2001 - 37.91%
- September 2001 - 30.33%
- October 2001 - 18.72%
- November 2001 - 29.62%
- December 2001 - 64.03%

(Coomes Affidavit ¶17; Appendix Exhibit K).

26. To meet his quota, plaintiff was required to sell 55 phones per month. Mr. Frazier sold the following number of phones:

- July 2001 - 10
- August 2001 - 9
- September - 22
- October - 12
- November - 22
- December - 30

(Coomes Affidavit ¶20; Appendix Exhibit L).

27. The following white and/or young (under 40) individuals, who were employed in sales at NPI's Rochester office during plaintiff's employment were terminated for failure to meet sales quota:

- Vincent Gambacurta
- Theodore Hartman
- Scott Cassella
- Sabrina Musumeci

All other sales personnel who were employed by NPI in Rochester during plaintiff's employment are either still employed with NPI or left voluntarily Thus, five individuals who worked in sales at NPI in the Rochester office in that time frame were terminated involuntarily, of whom only one, the plaintiff, was black or over 40. (Coomes Affidavit ¶22).

28. On or about January 23, 2002, plaintiff wrote a letter to Mr. James Wiegandt, Area General Manager, expressing his dissatisfaction with his termination. In this letter, plaintiff stated that he believed his termination to be "abrupt and completely unfair." Plaintiff did not mention any issues of race in the letter. He did admit that on occasion customers lodged complaints against him. (Appendix Exhibit G, pp.1-2).

29. Attached to the letter was a survey that plaintiff filled out. In his letter he stated that he filled it out "on the week-end of January 11th." In the survey he admitted that he needed to improve in the areas of product knowledge and punctuality. (Appendix Exhibit G, pp. 1,3).

(Defendant's Local Rule 56.1 Statement of Undisputed Material Facts.)

## STANDARDS OF LAW

### *Summary Judgment*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the

fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. FED. R. CIV. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Of course, it is well–settled that courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be

found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted). However, the general rule holds and a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

### *Title VII Claims*

Plaintiff, who is an African-American, asserts claims under Title VII of the Civil Rights Act of 1964, which states in pertinent part,

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment because of such individual's race, color, religion, sex, or national origin.…

42 U.S.C. § 2000e-2(a)(1). To make out a *prima facie* case of wrongful discharge, a plaintiff must show the following: (1) that he is a member of a protected class, (2) that he was "qualified" for the position he held; (3) that he was discharged and (4) that his discharge occurred in circumstances giving rise to an inference of discrimination based on his membership in a protected class. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995).

### *Age Discrimination in Employment Act Claims*

To establish a prima facie case in an ADEA action, a plaintiff, who is over forty years old, must show that "(1) he was within the protected age group; (2) he was qualified for the

job; (3) he was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of age discrimination." *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir. 1990) (citation omitted).

## DISCUSSION

A review of the unrefuted facts conclusively shows that defendant has proven that, although plaintiff is an African-American and over age forty, he will be unable to make a prima facie case under either Title VII or the ADEA, and that defendant is entitled to judgment. The evidentiary proof in admissible form establishes that plaintiff will not be able to prove that he was qualified for the job, or that he was discharged under circumstances giving rise to an inference of discrimination under either Act. Moreover, even if plaintiff had been able to establish a *prima facie* case, he has failed to show that Nextel's proffered nondiscriminatory reason for his termination was pretextual and that discrimination was a motivating factor in Nextel's firing of him.

## CONCLUSION

Accordingly, defendant's motion (# 34) for summary judgment is granted. The Clerk is directed to enter judgment for defendant and close this case.

IT IS SO ORDERED.

Dated: August 18, 2005
      Rochester, New York

ENTER:         /s/ Charles J. Siragusa
                           CHARLES J.  SIRAGUSA
                           United States District Judge